IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUNICE MURPHY, ) | |
| ) | |
| Plaintiff ) | Civil Action -- 4:05CV1545 RWS |
| ) | |
| v. ) | |
| ) | |
| MIDLAND CREDIT MANAGEMENT INC., ) | |
| PROVIDIAN FINANCIAL CORPORATION, ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC.; ) | |
| EQUIFAX INFORMATION SERVICES, LLC; AND ) | |
| TRANS UNION LLC; ) | |
| ) | |
| Defendants. | |

**EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Experian Information Solutions, Inc. ("Experian"), by and through its attorneys, respectfully requests that this Court grant summary judgment in Experian's favor on all counts of Plaintiff Eunice Murphy's Complaint on the ground that Plaintiff's claims against Experian fail as a matter of law.

## I.    INTRODUCTION

Plaintiff Eunice Murphy's ("Plaintiff") Complaint purports to state claims against Experian under unidentified subsections of Section 1681 of the Fair Credit Reporting Act ("FCRA"). Plaintiff's claims are based on her assertion that Experian reported inaccurate information about her Providian Financial Corporation account (the "Providian account")[1] and,

---

[1] Plaintiff disputed the Providian account with Experian on September 2, 2003. Experian immediately launched an investigation, and upon receipt of a response from Providian, Experian deleted the account and so informed Plaintiff on September 26, 2003. (SOF ¶¶ 31, 32, 35.) Simply put, as Plaintiff admits, Experian did everything Plaintiff asked of it or required of it under the FCRA with regards to the Providian account. (SOF ¶ 33.) As such, no liability can attach regarding Experian's handling of the Providian account. *See* 15 U.S.C. § 1681(o); *Thornton v. Equifax*, 619 F.2d 700, 703 (8th Cir. 1980) ("only noncompliance with a requirement [] of the Act" will subject one to liability under the FCRA).

after Providian sold the account to Midland Credit Management ("Midland"), her Midland account (the "Midland account").  She further alleges that Experian failed to conduct reasonable reinvestigations of her disputes regarding the status of those accounts.  (SOF ¶¶ 45-46.) Specifically, Plaintiff alleges that the accounts did not belong to her, but rather belonged solely to her late husband.  However, the record reveals that the accounts actually did belong to Plaintiff.  Plaintiff was a joint user on the Providian account with her late husband, and when she failed to pay the Providian balance following her husband's death, as she was legally obligated to do, the Providian account was sold to Midland.  (SOF ¶¶ 16, 20, 22.)  Thus, Plaintiff has failed to allege an inaccurate reporting.  In addition, Plaintiff has no evidence of damages or causation. Moreover, Plaintiff has failed to produce any evidence indicating that Experian's procedures in this case were not reasonable as a matter of law, and she has failed to demonstrate that Experian acted willfully.  Summary judgment should be granted in favor of Experian.

## II.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[O]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Mere arguments or allegations are insufficient to defeat a

properly supported motion for summary judgment; a 'nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.'" *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

### III.  ARGUMENT

#### A.  Plaintiff's Claims Fail As A Matter of Law Because Experian Reported Accurate Information Regarding the Midland Account.

"[I]t is axiomatic that no claim can be stated under [the FCRA], unless the plaintiff demonstrates that the [credit] report which he challenges was inaccurate." *Wright v. TRW Credit Data*, 588 F. Supp. 112, 114 (S.D. Fla. 1984).  In fact, "in order to make out a prima facie violation of [the FCRA] . . . a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (granting summary judgment for credit reporting agency on plaintiffs § 1681e(b) and § 1681i(a) claims because the information was accurate).  If the plaintiff "fails this initial burden . . . a court need not inquire further" and summary judgment should be granted for the defendant credit reporting agency.  *Id.*; *see also Beyer v. Firstar Bank N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (affirming summary judgment for defendant sued under FCRA because the plaintiff "failed to present any evidence from which a reasonable jury could have determined that the report was false").

Experian reported accurate information about the Midland account.  Midland purchased the account from Providian in 2001.  (SOF ¶ 22.)  The account with Providian was a joint account with Plaintiff and her husband.  (SOF ¶ 16.)  Plaintiff's husband passed away in 2000, after which time Plaintiff became individually responsible for the balance on the account.  (SOF ¶¶ 19, 20.)  Plaintiff should have been aware of this long before she contacted Experian, as she had been receiving statements from Providian listing the account in her name dating back to

1998.  (SOF ¶ 18.)  Indeed, Plaintiff herself admitted that she received the statements from Providian, but simply laid them aside.  (SOF ¶ 21).  Years later, in 2003, Plaintiff began to question the accounts and disputed the accounts with Providian and Midland.  (SOF ¶ 23.)  Because the dollar value of the account was too small to make it worth investigating thoroughly, Providian simply bought the account back from Midland in 2005.  (SOF ¶ 25.)  Immediately thereafter, Experian stopped reporting the Midland account on Plaintiff's credit file.  (SOF ¶ 41.)

Because Experian reported accurate information regarding the Midland account – at all times she was legally responsible for the balance as a joint user – Plaintiff's § 1681 claims must fail.  Accuracy is a complete defense to both § 1681e(b) "reasonable procedures" claims and § 1681i(a) "reinvestigation" claims.  "If the information is accurate, no further inquiry into the reasonableness of the credit reporting agency's procedures [under § 1681e(b)] is necessary."  *Sutherland v. TRW*, 1996 U.S. Dist. LEXIS 3320, at *14 (N.D. Ill. March 20, 1996) (granting summary judgment for defendant on plaintiff's § 1681e(b) claim) (unreported cases attached as App. 2).  Similarly, summary judgment is proper on Plaintiff's § 1681i(a) claim because "no additional amount of factual investigation by [the defendant] would have revealed any 'inaccuracy' in its reporting of the [disputed] account because there was none."  *Cahlin*, 936 F.2d at 1160.

### B.     Plaintiff Has no Evidence of Actual Damages or Causation

A credit reporting agency "cannot be liable [under the FCRA] unless the consumer can show that he was harmed by the [agency's] negligent action.  Thus, a consumer who was denied credit must show that the denial was caused by inaccurate entries (which in turn were caused by the defendant's failure to use reasonable procedures), rather than by correct adverse entries or

any other factors." *Pendleton v. TransUnion Sys. Corp.*, 76 F.R.D. 192, 195 (E.D. Penn. 1977). Plaintiffs cannot establish damages or causation for numerous reasons.

        1.        Plaintiffs Have No Evidence They Were Denied Credit Due To An Experian Credit Report.

Plaintiff's entire damages claim hinges on a singular denial for a $3,200 loan. Because that singular denial was not the result of reliance on an Experian report, and because that denial letter cites numerous reasons for the denial – including the fact that plaintiff had excessive obligations in relation to income – Plaintiff has failed to properly allege any damage she has suffered at the hands of Experian.

Experian cannot be held liable for credit denials when the credit grantor relied on another credit reporting agency's report. *See Matise v. Trans Union Corp.*, 1998 U.S. Dist. LEXIS 19775, at *21-22 (N.D. Tex. Nov. 30, 1998); *see also Zotta v. Nationscredit Fin. Serv. Corp.*, 297 F.Supp.2d 1196, 1205 (E.D. Mo. 2003) (granting Experian summary judgment where Plaintiff was unable to show that an Experian credit report was the source of Plaintiff's alleged damage). Plaintiffs "bear[] the burden of proving that a[n] [Experian] credit report was a causal factor in the denial" of their applications for credit. *Cahlin v. GMAC*, 936 F.2d 1151, 1161 (11th Cir. 1991).

Plaintiffs simply have no evidence that any credit grantor has denied Plaintiff credit after reviewing an ***Experian*** credit report, let alone that it relied on an ***Experian*** credit report in deciding to deny Plaintiff credit. (SOF ¶¶ 48-49.) Indeed, the only proof of a denial that Plaintiff has provided (and indeed the only denial that Plaintiff alleges), is indisputably based on a Trans Union credit report, not an Experian credit report. (SOF ¶ 51.)

Without any evidence that a credit grantor relied upon an Experian report as opposed to another credit reporting agency's credit report, Plaintiffs' claims cannot survive summary judgment on causation.

>    2.   Plaintiff Has No Evidence That She Was Denied Credit Due To Allegedly Inaccurate Information In An Experian Credit Report, Rather Than Correct Adverse Entries Or Any Other Factors.

Even if Plaintiffs had evidence that a credit grantor received an Experian credit report containing the allegedly inaccurate information and used that Experian report to deny Plaintiff credit, Plaintiff must also establish that the allegedly inaccurate information as opposed to "correct adverse entries or any other factors" led to the credit denials. *Pendleton*, 76 F.R.D. at 195. Numerous other items in Plaintiff's credit report and credit application could have negatively impacted her ability to obtain credit.

For instance, Plaintiff's December 16, 2004 Experian credit file contains five other negative tradelines in addition to the Midland account. (SOF ¶ 38.) Plaintiff verified that some of these accounts were accurately being reported as belonging to her. (*Id.*) Plaintiff further admitted to the fact that because of these numerous negative tradelines, her credit report "doesn't look good." (*Id.*) These five derogatory accounts could have played a causal role in any denial of credit Plaintiffs may have suffered.

In addition, it is undisputed that lenders look at numerous factors other than a credit report including capacity to repay and collateral. Plaintiff had insufficient income to support nearly any financing she may have sought. Plaintiff has not worked since January, 2001. (SOF ¶ 54.) At the time she was denied the loan from Community Bank of Sedalia, Plaintiff's sole source of income was from Social Security and she admits that she was having financial difficulties. (SOF ¶ 55) Social Security provided her less than $13,000 a year. (*Id.*) With this

CHI-1541961v1                                                                 6

in mind, it is unsurprising that one of the reasons that Plaintiff was denied her loan request in January, 2005 was that Plaintiff had "excessive obligations in relation to income." (SOF ¶ 53) As such, there is no evidence that, even if Trans Union had not been reporting the Midland account, Plaintiff would have been granted the loan from Community Bank.

When all the facts are viewed together, Plaintiff cannot demonstrate that she was otherwise qualified for any loans or financing she may have considered applying for, and she cannot prove that she was denied loans or financing due to Experian's reporting of the Midland tradeline as opposed to the other adverse entries on her credit report or other factors such as insufficient income, unacceptable loan-to-value, high revolving balances relative to their credit limits, etc. *See, e.g., Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (affirming summary judgment for defendant because "[w]ithout a causal relation between the violation of the statute and the loss of credit, or some other harm, a Plaintiff cannot obtain an award of 'actual damages'"); *Evans v. Credit Bureau*, 904 F. Supp. 123, 126 (W.D.N.Y. 1995) (granting summary judgment for defendant in part because "plaintiff still failed to present affirmative evidence that he was in fact denied a loan application or required to pay excessive interest rates because of the alleged incorrect information contained in the credit report").

        3.        Plaintiff Has No Evidence Of Credit Denial Or Actual Injury Upon Which To Base Her Claims Of Emotional Distress.

Next, Plaintiff alleges that she has suffered emotional distress as a result of the allegedly inaccurate information on her credit report. (SOF ¶ 48.) Plaintiff's claim fails because she has no evidence that her emotional distress was proximately caused by Experian.

In *Casella*, the district court granted the credit reporting agencies' motions for summary judgment, finding that the plaintiff had not shown that the credit reporting agencies, as opposed to San Diego County who first reported and verified the information, were the cause of plaintiff's

emotional distress. *Casella*. 56 F.3d at 473. The Court of Appeals affirmed the holding of the district court that "plaintiff was not entitled to [emotional distress] damages in this case, because he had failed to show that his emotional distress was caused by [the credit reporting agencies], as opposed to San Diego." *Id.* at 474. The same is true here. Plaintiff has produced no evidence that Experian is responsible for her emotional distress as opposed to Midland who reported the allegedly inaccurate information in the first place and then verified it to Experian numerous times, or as opposed to the untimely deaths of both her husband and her grandson. Indeed, in her responses to Experian's interrogatories regarding her emotional distress, Plaintiff focuses almost exclusively on the behavior of Midland, and not Experian. (SOF ¶ 58.) (*e.g.* "[E]ach time [Plaintiff] returned home from the hospital, she was met by a full answering machine making demands for payment of this account and a corresponding stack of demand letters from Midland.") Moreover, any emotional distress Plaintiff may have suffered during the past few years was most likely the result of some combination of the untimely deaths of both her husband in 2000 and her grandson, whom she raised, in 2002, – events that Plaintiff admits understandably caused her a great deal of emotional distress (SOF ¶ 59, 61 - 62) – and the myriad medical ailments Plaintiff has been suffering from since long before she was even aware of who Experian is. With this background, Plaintiff is unable to support any self-serving allegation that her emotional distress was caused by Experian and not the multitude of traumatic life events Plaintiff has endured in recent years.

Furthermore, courts hold that plaintiffs suing under the FCRA may not recover emotional distress damages absent a denial of credit or other actual harm caused by the defendant's credit report. *See, e.g., Cousin v. Trans Union Corp.*, 246 F.3d 370-71 (5th Cir. 2001); *Sutherland v. TRW*, 1996 U.S. Dist. LEXIS 3320, at *21-23 (N.D. Ill. Mar. 20, 1996) (granting summary

judgment for defendant credit bureau where plaintiff could not prove a credit denial but claimed she suffered humiliation, embarrassment, felt tense, lost sleep, had headaches and felt angry); *Ladner*, 828 F. Supp. at 432 (summary judgment for credit bureau on all of plaintiff's claims including emotional distress because she could not demonstrate she was ever denied a loan).

Plaintiff has no evidence she was denied credit or suffered any harm due to Experian. Plaintiff's claims for emotional distress, therefore, appear to based solely on Plaintiff's assertion that *she* knew that the allegedly inaccurate Midland account was being reported on her Experian credit report, and that this knowledge alone caused her distress. Fatal to Plaintiff's claim, however, courts have explicitly rejected this type of emotional distress claim. *See, e.g., Casella*, 56 F.3d at 475 ("[Plaintiff's] argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report. We are unaware of any case extending FCRA damages that far."). Plaintiff's unsubstantiated claims of frustration, stress, and raw nerves bear striking similarity to the claims of the plaintiff in *Sutherland* where the court found "no case where a plaintiff was awarded damages for such trivial injuries *in the absence* of a denial of credit." *Sutherland*, 1996 U.S. Dist. LEXIS 3320, at *28 (emphasis in original); *see also Field v. Trans Union LLC*, 2002 U.S. Dist. LEXIS 7973, at *18 (N.D. Ill. May 3, 2002) ("When an injured party provides the only evidence of emotional distress, [she] must reasonably and sufficiently explain the circumstances of the injury, and not rely on mere conclusory statements.").

    C.    **Experian Employed Reasonable Procedures As A Matter of Law**

Even if plaintiff could establish a triable issue regarding the accuracy of the information that Experian was reporting with respect to the Midland account, or if Plaintiff suddenly reveals a credit denial based on an Experian report, Experian is entitled to summary judgment on

Plaintiff's § 1681e(b) claim because plaintiff cannot adduce any facts to establish that Experian did not follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information. The FCRA requires that: "[w]henever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Congress recognized that total accuracy in consumer reports is not a realistic objective. *Equifax Inc. v. FTC*, 678 F.2d 1047, 1048-49 (11th Cir. 1982). Thus, section 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report. *See Cahlin*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Sepulvado v. CSC Credit Serv., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998). In order to make out a prima facie claim under § 1681e(b) of the FCRA, Plaintiff must establish that there was inaccurate information on her consumer credit report that was due to Experian's failure to follow reasonable procedures to ensure the maximum possible accuracy of its credit reports. *Cahlin*, 936 F.2d at 1156.

The standard for evaluating the reasonableness of a credit reporting agency's procedures is "what a reasonably prudent person would do under the circumstances." *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022 (1987); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994). In assessing the reasonableness of a credit reporting agency's procedures, "the potential harm from inaccuracy" must be weighed against "the burden of safeguarding against such inaccuracy." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 965 (3d Cir. 1996); *Ruffin-Thompkins v. Experian Info. Sys, Inc.*, 2003 U.S. Dist. LEXIS 23647, at *11 (N.D. Ill. Dec. 31, 2003). Whether a credit reporting agency has complied with the requirement of adopting reasonable procedures to assure maximum possible accuracy may be decided on a motion for summary judgment where, as here,

"the reasonableness of the procedures used by the consumer reporting agency is beyond question." *Lee v. Experian Info. Solutions*, 2003 U.S. Dist. LEXIS 17420, at *9 (N.D. Ill. Oct. 1, 2003) (granting Experian's motion for summary judgment where plaintiff did not raise a genuine issue of material fact as to any element for a § 1681e(b) claim); *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 23647, at *9-14 (N.D. Ill. Dec. 31, 2003) (same).

Experian has extensive procedures for assuring maximum possible accuracy of reported credit information. Indeed, before any creditor information is placed in a consumer's file, Experian subjects the information to rigorous quality control and statutory compliance procedures. These procedures include: (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (4) working with consumers to proactively prevent errors in consumer reports. (SOF ¶ 6.) In addition, Experian has implemented several additional computer safeguards and procedures to assure the maximum possible accuracy of the credit information it reports. These include the procedures followed for the processing of information reported to Experian by creditors. (SOF ¶ 7.) Experian only accepts consumer credit information from sources that it considers reliable reporters of such information. *Id.* And, Experian has built into its computer system an extensive range of checks that are designed to detect as many potential errors as possible. *Id.* These checks include the creating of individual profiles of how individual lenders have reported over the most recent prior three months and comparing such profile against the most recently received report of credit information from the creditors in order to detect anomalies. *Id.* Experian's validation of consumer credit information,

of necessity, is unable to extend to conducting an independent hearing with respect to each account being reported, nor is it required to under the FCRA. *Id.* at ¶ 7. In excess of fifty million accounts are reported to Experian each day. *Id.* Furthermore, Experian even has a dedicated group of individuals that specifically monitor the reporting from debt buyers, like Midland. (SOF ¶ 8.)

The reasonableness of Experian's procedures is further demonstrated by the fact that Experian had no objective indication that the information received from Midland was unreliable. It is undisputed that credit reporting agencies satisfy the reasonable procedures requirement imposed under the FCRA when they rely on information received from a credit grantor and have no reason to doubt the accuracy of that information. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 975 (M.D. Fla. 1985); *accord Roseman v. Retail Credit Co.*, 428 F. Supp. 643, 645-46 (E.D. Pa. 1977). *See also* 16 C.F.R. Part 600, App. at 508 (1997) ("The [Section] does not require error free consumer reports. If a consumer reporting agency accurately transcribes, stores, and communicates consumer information received from a source that it reasonably believes to be reputable, which is credible on its face, the agency does not violate this section simply by reporting an item that turns out to be inaccurate.") Thus, courts have held that a credit reporting agency is excused from independently verifying information provided by creditors unless the agency had prior knowledge that the information might be inaccurate or that the source is unreliable. *Ruffin-Thompkins*, 2003 U.S. Dist. LEXIS 2367, at *11 (N.D. Ill. Dec. 31, 2003); *see also Zahran v. Transunion Corp.*, 2003 U.S. Dist. LEXIS 5089, at *14-15 (N.D. Ill. March 31, 2003).

      **D.**    **Experian's Procedures In Reinvestigating Plaintiff's Disputes Were Reasonable**

Section 1681i of the FCRA requires credit reporting agencies to reinvestigate information that is disputed by a consumer and delete inaccurate or unverifiable information. 15 U.S.C. § 1681i(a). A credit reporting agency complies with the reinvestigation requirements of the FCRA by reinvestigating disputed information with the source of the information to verify that it is accurate. *Boothe v. TRW Credit Data*, 768 F. Supp. 434, 438 (S.D.N.Y. 1991).

Experian complies with the reinvestigation obligations imposed by the FCRA by using CDVs. A CDV is generated and sent by Experian to directly notify the furnisher of disputed information of the consumer's disputes and obligates the furnisher to re-check its records to ensure that the account information is being reported correctly by Experian. (SOF ¶ 13.) Experian's reinvestigation procedure, as well as similar procedures implemented by other credit reporting agencies, has been reviewed and approved by several federal courts considering the obligations imposed by Section 1861i(a) of the FCRA. *See Boothe v. TRW Credit Data*, 768 F. Supp. 434, 435-439 (S.D.N.Y. 1991) ("the CDV procedure alone is accepted by courts as an adequate method for both assuring accuracy and for reinvestigation."); *see also Dickens v. Trans Union Corp.*, U.S. App. LEXIS 19443, at *9-11 (6th Cir. Aug. 23, 2001); *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1032-35 (S.D.N.Y. 1996); *Schmitt v. Chase Manhattan Bank, N.A.*, 2005 U.S. Dist. LEXIS 18029 (D. Minn. Aug. 23, 2005).

In the instant case, there is no basis for Plaintiff to allege, much less proffer evidence, that Experian failed to investigate her disputes in accordance with the FCRA. Experian initiated no fewer than three separate reinvestigations of the Midland account. (SOF ¶¶ 31, 37, 40.) In each instance, Experian, following the CDV procedures approved by numerous courts, *supra*, sent a CDV to Midland to specifically verify the accuracy of the information it reported to Experian concerning the status of its account with Plaintiff. (*Id.*) Midland repeatedly verified

that the information it was reporting to Experian was accurate. (SOF ¶ 34, 37.) Because Experian followed the same reinvestigation procedures that repeatedly have been held reasonable and appropriate as a matter of law, summary judgment should be granted.

As a matter of law and a matter of fact, Experian's procedures, followed in this case, cannot be found to be anything but permissible and reasonable as a matter of law under the FCRA. Accordingly summary judgment should be granted in favor of Experian.

### E. Plaintiff Has No Evidence Of Willfulness Justifying Punitive Damages.

To prove willfulness, Plaintiff carries the heavy burden of showing that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See Casella*, 56 F.3d at 476. Plaintiff cannot make such a showing, and indeed in her deposition admitted as much. (SOF ¶ 63.)

Plaintiff has no evidence of willful conduct. Quite to the contrary, it is undisputed that Experian promptly sent Plaintiff copies of her Experian consumer credit reports when she requested them. (SOF ¶¶ 35, 43.) Every time Plaintiff requested an investigation, Experian performed one and sent Plaintiff copies of her updated report. (SOF ¶¶ 31, 37, 40.) Based on the results of the investigations, Experian either deleted the disputed accounts, updated them to reflect the status Plaintiff requested, or, if verified as accurate by the creditor, Experian notified Plaintiff they would remain on her credit report. (SOF ¶¶ 32, 35, 37, 42.)

Generally, courts have allowed a willful noncompliance claim under 15 U.S.C. § 1681n to proceed only where a defendant's conduct involves willful misrepresentations or concealments. *Stevenson v. TRW*, 987 F.2d 288, 293-94 (5th Cir. 1993). Conversely, where a credit reporting agency provides the consumer credit reports on request, does not conceal information about the consumer's report, investigates the disputed accounts, and attempts to

resolve the complaint, there is no willful violation. *Stevenson v. TRW*, 987 F.2d 288, 293-94 (5th Cir. 1993).

There is no evidence that Experian concealed anything from, or misrepresented anything to, Plaintiff. To the contrary, the instant matter is analogous to *Field* in which the court held that because the credit reporting agency responded to plaintiff's requests, revised her credit reports, investigated her disputes, and sent plaintiff updates of her credit history without delay, the credit reporting agency "did not engage in willful misrepresentations and concealment, or hinder [the plaintiff's] attempts to correct her credit report." *Field v. Trans Union LLC*, 2002 U.S. Dist. LEXIS 7973, at *22 (N.D. Ill. May 3, 2002).

Plaintiff's claim for willful noncompliance and punitive damages should be dismissed.

## IV.  CONCLUSION

As shown herein, Experian has fully complied with its obligations under the FCRA. Because Plaintiff has failed to demonstrate any error by Experian in reporting or reinvestigating items on her credit report, and because Plaintiff has not suffered any damages attributable to Experian's conduct, Experian respectfully requests that this Court enter summary judgment in Experian's favor and dismiss this case with prejudice

Dated: July 10, 2006                                     Respectfully submitted,


                                                         /s/ Adam W. Wiers
                                                         Adam W. Wiers
                                                         *pro hac vice*
                                                         JONES DAY
                                                         77 West Wacker Drive
                                                         Chicago, IL  60601-1692
                                                         Telephone:  (312) 782-3939
                                                         Facsimile:   (312) 782-8585
                                                         Email:  awwiers@jonesday.com

                                                         Counsel for Defendant
                                                         EXPERIAN INFORMATION SOLUTIONS, INC.

## **CERTIFICATE OF SERVICE**

      I, Adam W. Wiers, an attorney, certify that on July 10, 2006, I served Defendant Experian Information Solution, Inc.'s Motion for Summary Judgment and Memorandum of Law in Support of Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail addresses on file with the Court:

| | |
|---|---|
| Blair K. Drazic<br>Blair K. Drazic, P.C.<br>711 Old Ballas<br>Suite 220<br>Creve Coeur, Missouri 63141<br><br>Counsel for Plaintiff | Mike W. Bartolacci<br>Thomas L. Azar, Jr.<br>Thompson Coburn<br>One US Bank Plaza<br>St. Louis, Missouri 63101<br><br>Counsel for Providian Financial Corporation |
| Steven H. Schwartz<br>Frederick J. Ludwig<br>Brown & James<br>1010 Market Street, 20th Flr.<br>St. Louis, Missouri 63101-2000<br><br>Counsel for Trans Union, LLC | Christopher T. Lane<br>Mickey Joe Lee<br>Schuckit and Associates, P.C.<br>10 W. Market Street, Suite 3000<br>Indianapolis, Indiana 46204<br><br>Counsel for Trans Union LLC |
| Brian L. Frary<br>Midland Credit Management, Inc.<br>Corporate Counsel, Litigation<br>8875 Aero Drive, Suite 200<br>San Diego, California 92123<br><br>Counsel for Midland Credit Management, Inc. | Keith Wier<br>Daw and Ray<br>5718 Westheimer<br>Suite 1750<br>Houston, Texas 77057<br><br>Counsel for Midland Credit Management, Inc. |
| Ashley L. Narsutis<br>Hinshaw and Culbertson<br>701 Market Street<br>Suite 1300<br>St. Louis, Missouri 63101<br><br>Counsel for Midland Credit Management, Inc. | Justin M. Penn<br>Hinshaw and Culbertson<br>222 N. LaSalle Street<br>Suite 300<br>Chicago, Illinois 60601<br><br>Counsel for Midland Credit Management, Inc. |

John J. Friedline
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530

Counsel for
Equifax Information Services, LLC


                                                                     /s/ Adam W. Wiers
                                                                     Adam W. Wiers