UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUNICE MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV1545 RWS |
| ) | |
| MIDLAND CREDIT MANAGEMENT, ) | |
| INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Eunice Murphy ("Murphy") claims that Defendants Trans Union, LLC. and Experian Information Solutions, Inc. violated her rights by willfully or negligently failing to comply with the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, and as a result she has been denied credit and incurred emotional distress, inconvenience and expense. Defendants Trans Union, LLC. and Experian Information Solutions, Inc. (hereinafter "Defendants")[1] are credit reporting agencies that report consumer credit based on information provided by creditors. Defendants, based on information provided by creditors Providian Financial Corporation ("Providian") and Midland Credit Management, Inc. ("Midland"), reported to one or more creditors that Murphy had a delinquent account with Providian and Midland.

Trans Union and Experian have moved for summary judgment on the following grounds:

- they reported accurate information regarding the delinquent account;

- they cannot be liable for any alleged damages prior to Plaintiff advising them that she disputed the accuracy of her credit report;

---

[1]Trans Union and Experian are the only remaining defendants in this matter.

- they cannot be liable for any alleged damages after Plaintiff advised them of her dispute because their reinvestigations of the account and reliance on the furnishers' verifications were proper and reasonable as a matter of law;

- statutory law provides that the furnisher's duty to accurately report information preclude their liability;

- Murphy cannot meet her burden of proof that her single alleged credit denial was caused by Defendants' reporting the subject information or that she suffered emotional distress; and

- Murphy can produce no evidence that Defendants "willfully" failed to comply with their duties.

The motion for summary judgment will be granted in part and denied in part. I will grant summary judgment in favor of Defendants on Murphy's 15 U.S.C. § 1681e(b) claims because Defendants' reporting procedures, prior to Murphy's initial disputes, were reasonable. I will also grant summary judgment in favor of Defendants on Murphy's 15 U.S.C. § 1681i(a) claims as to the issue of causing her Community Bank credit denial because Murphy cannot prove causation. I will also grant summary judgment in favor of Trans Union on Murphy's 15 U.S.C. § 1681n claim because Murphy has admitted Trans Union did not act willfully. I will deny Defendants' motion for summary judgment as to all other claims because there are disputes of material fact which preclude a judgment as a matter of law.

**I.     BACKGROUND**

Plaintiff Eunice Murphy married Dale Murphy in 1996. In May 1998, Providian Financial Corporation acquired from First Union National Bank a credit card account that Defendants

Experian and Trans Union allege was jointly owned by both Eunice and Dale Murphy.  Joint accounts are accounts that have two individuals that are both contractually liable for the balance owed.  Eunice Murphy denies having ever applied for, agreed to use, or signed for the Providian account.  Eunice Murphy's name appeared on billing statements for the Providian account since at least June 15, 1998.

In June 2000, Dale Murphy passed away.  After his death, Providian removed his name from the account.  Providian continued to report Eunice Murphy's individual liability on the Providian account.  In July 2001, Providian sold the account to Midland Credit Management, Inc. ("Midland") and Midland began reporting Eunice Murphy's alleged personal individual liability on the account in the delinquent amount of $926.  Midland reported the account as a Midland account using a different account number than Providian had previously reported.

On March 29, 2004, Eunice Murphy applied to Community Bank of Pettis County for a loan of $3,200.  The bank denied the loan.  In January 2005, Plaintiff again applied for a loan of $3,200 from Community Bank.  On January 28, 2005, Community Bank sent Murphy a letter again denying the loan.  The letter stated that the denial was based on a Trans Union credit report. The letter further stated that the bank had denied the loan for multiple reasons, including "excessive obligations in relation to income," "delinquent past or present credit obligations with others," and "garnishment, attachment, foreclosure, repossession, collection action or judgment." Since January 2001, Eunice Murphy's sole basis of income has been her Social Security Disability benefits of $1,065 per month.

    A.    ***Experian's Reporting of Eunice Murphy's Providian and Midland Accounts***

On August 28, 2003, Eunice Murphy contacted Experian by telephone and requested a

copy of her consumer credit disclosure from Experian.  Experian sent her a copy of her consumer credit disclosure as required by the FCRA.  On the August 28, 2003 disclosure, Experian reported <u>both</u> a Providian and a Midland account for Eunice Murphy and identified both as delinquent accounts.  On September 2, 2003, Murphy contacted Experian by telephone to request a reinvestigation of the Providian and Midland accounts, informing Experian that she did not believe that either the Providian or the Midland accounts belonged to her and asserting that she was not responsible for the accounts.

In response to Eunice Murphy's request, Experian initiated investigations into both the Providian and Midland accounts.  Experian sent a Consumer Dispute Verification ("CDV") to both Providian and Midland on September 2, 2003.  The CDV described Eunice Murphy's dispute and requested that Providian and Midland verify the accuracy of the information that Experian was reporting with respect to each account.  Providian responded to Experian's inquiry by deleting the account.  Midland responded to Experian's inquiry by verifying that the account was being reported accurately.  Based on these responses from Providian and Midland, Experian deleted the Providian account from Eunice Murphy's credit report.  Experian sent Murphy confirmation of the results of the two investigations, including notice that the Providian account had been deleted.  Murphy telephoned Experian on September 29, 2003, asking that it again reinvestigate the Midland account.  In response, Experian reinvestigated the Midland account by merely sending Midland another CDV.  In response to the second CDV, Midland again verified the accuracy of the delinquent account.

On January 31, 2005, Eunice Murphy called Experian to request another reinvestigation into the Midland account.  Eunice Murphy continued to maintain that the account was not hers.  In

response, Experian sent a third CDV to Midland.  Midland did not reply to this CDV within thirty days.  In keeping with its policy to delete the account related to a CDV that is not responded to within thirty days, Experian deleted the Midland account from Eunice Murphy's report in February 2005.  On March 2, 2005, Experian sent Eunice Murphy a revised credit disclosure reflecting the removal of the Midland account.

As a result of the allegedly inaccurate negative credit information reported by Experian, Eunice Murphy alleges that her credit standing was and will in the future be damaged, causing her to sustain denials of credit, emotional distress, inconvenience and expense caused by the denials of credit.

### B.    *Trans Union's Reporting of Eunice Murphy's Providian and Midland Accounts*

On or about August 29, 2003, Eunice Murphy disputed the ownership of the Providian account with Trans Union.  Thereafter, on or about September 18, 2003, Trans Union removed the Providian account from Eunice Murphy's credit file.  On or about that same date, Murphy disputed her liability on the Midland account.  Trans Union initiated an investigation of the Midland account via an automated CDV ("ACDV"), informing Midland that Eunice Murphy disputed the Midland account as "not hers and requesting that Midland "provide complete identification" including social security number.  On or about October 15, 2003, Midland advised Trans Union that Eunice Murphy was liable on the Midland account and provided Murphy's complete identification, including social security number.  Trans Union thereafter sent Murphy the results of its investigation and included a current copy of her Trans Union credit file, stating that Midland had confirmed the delinquent account's accuracy.

On January 28, 2005, Eunice Murphy again disputed her liability for the Midland account

with Trans Union. Trans Union initiated another investigation and contacted Midland with another ACDV that Eunice Murphy contended that she was not liable for the account. Trans Union directed Midland to provide complete identification, including social security number and type of liability, if Midland determined Eunice Murphy was liable. Midland responded by verifying that Eunice Murphy was liable for the delinquent Midland account. Midland also provided Eunice Murphy's complete identification, including social security number, and identified the type of liability as "individual." On February 2, 2005, Trans Union sent Murphy the results of its second investigation, including a copy of her Trans Union credit file, stating that Midland had confirmed that the delinquent Midland account was accurately reported.

As a result of this negative credit information reported by Trans Union, Murphy alleges that her credit standing was and will in the future be damaged, causing her to sustain denials of credit, emotional distress, inconvenience and expense caused by the denials of credit.

## II.     STANDARD OF REVIEW

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions,

answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## III.    FAIR CREDIT REPORTING ACT

Murphy claims that Experian and Trans Union allegedly violated two separate duties of care imposed by Congress on credit reporting agencies in the FCRA.

Under section 1681e(b) of the Act, a credit reporting agency, when preparing a credit report on a consumer, is required to "follow *reasonable* procedures to assure *maximum* possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). In addition, if a consumer brings a dispute to the agency regarding the completeness or accuracy of a credit report, the agency is required by section 1681i(a) "within a reasonable period of time [to] reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant." 15 U.S.C. § 1681i(a). As part of its enforcement mechanism, the Act creates a private right of action against credit reporting agencies for negligent or willful violation of these or other duties imposed by this legislation. Id. §§ 1681n and o.

## IV.  ANALYSIS

### A.  *Defendants' Accuracy Defense Fails to Meet the Summary Judgment Standard*

Experian and Trans Union argue that because they reported accurate information regarding the Midland account, their procedures were conclusively reasonable to assure maximum possible accuracy of the information concerning Murphy. This blanket defense of "accuracy" is not available to the defendants because of the dispute of material facts discussed below.

"In order to make out a prima facie violation of section [1681e(b)], the [FCRA] implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information. If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section [1681e(b)], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991). A section 1681i(a) claim "is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." Id. at 1160. Therefore, accurate reporting by a credit reporting agency is a complete defense to both a section 1681e(b) and 1681i(a) claim.

In their motions for summary judgment, both Experian and Trans Union presented evidence in the form of Providian employee Kathy Rantz's declaration that the credit agencies at all times accurately reported the Providian and Midland accounts. This shifted the burden to Murphy to prove that Experian and Trans Union's reports were false. Murphy met that burden by submitting her affidavit, contesting Defendants' evidence. Beyer v. Firstar Bank N.A., 447 F.3d 1106, 1108 (8th Cir. 2006) (finding that Mr. Beyer had not met his burden because he did not submit an

affidavit or any other evidence from which a reasonable jury could conclude that his complaint was true).  In her affidavit, Murphy testified that she had never owned the disputed credit card, nor had she ever agreed to pay on the account.  Viewing the facts in the light most favorable to Murphy, a jury could find that Experian and Trans Union had not followed *reasonable procedures* to assure the *maximum* possible accuracy of the information contained in Murphy's credit report.  When, as here, the facts are disputed, "[w]hether a reasonable investigation has been conducted is generally a question of fact for the jury.  Bruce v. First U.S.A. Bank, N.A., 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000).

Because there is a genuine dispute of material fact regarding the reasonableness of Experian and Trans Union's reporting practices, summary judgment for Experian and Trans Union on the  basis of accurate reporting will be denied on Murphy's 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a) claims.

### B.     *Defendants' Reporting Procedures, Prior to Plaintiff's Initial Disputes, Were Reasonable as a Matter of Law*

Defendants argue in the alternative that even if the reported information was inaccurate, the mere reporting of inaccurate information is not enough because it is well established that the FCRA is not a strict liability statute.  Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir. 1979) (consumer reporting agency not held strictly liable for inaccurate information contained in consumer report; liability attaches only when agency fails to follow reasonable procedures to ensure accuracy).  A consumer reporting agency is not liable, as a matter of law, for reporting information from records of financial institutions, unless there is notice of prevalent unreliable information from a furnisher which would put a credit reporting agency on notice that systematic

problems existed within its system, or unless it has prior notice from the consumer that the information might be inaccurate. Sarver v. Experian Info. Solutions, 390 F.3d 969, 972 (7th Cir. 2004).

Here, Murphy has not put on any evidence that Experian or Trans Union knew or should have known that the information it received was unreliable or that any type of systematic problem existed. It is undisputed that on September 2, 2003, Murphy initiated a dispute with Experian that the Midland and Providian accounts were not hers. It is also undisputed that on or about August 29, 2003, Murphy initiated a dispute with Trans Union that the Providian account was not hers, and on or about September 18, 2003, Murphy notified Trans Union of her dispute that the Midland account was not hers. Murphy has failed to allege any additional facts of Providian or Midland's unreliable nature that would support a finding of unreasonableness in Experian and Trans Union's reporting procedure prior to Murphy initiating these disputes. There is nothing in the record before me to establish that Experian and Trans Union's procedures were unreasonable prior to Murphy initiating the disputes regarding the Providian and Midland accounts.

Accordingly, summary judgment will be granted for Experian and Trans Union on Murphy's 15 U.S.C. § 1681e(b) claim.

### C. *Defendants are Not Entitled to Summary Judgment Because There is a Material Dispute as to the Reasonableness of Defendants' Reinvestigation Procedures*

Under the FCRA, if a consumer disputes any item of information contained in a consumer's file at a consumer reporting agency, the consumer must notify the agency of the dispute, and the agency must then "conduct a *reasonable* reinvestigation to determine whether the disputed

information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). The adequacy of the consumer reporting agency's procedures is judged according to what a reasonably prudent person would do under the circumstances. Cousin v. Trans Union Corp., 246 F.3d 359, 368 (5th Cir. 2001) (quoting Thompson v. San Antonio Retail Merchants Ass'n, 682 F.2d 509, 513 (5th Cir. 1982)). "Factors to be considered in determining whether a credit reporting agency has conducted a reasonable investigation include: (1) whether the consumer has alerted the agency that the initial source of the information may be unreliable or if the agency knows or should know that the source is unreliable, and (2) the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information." Bruce, 103 F. Supp. 2d at 1143. "The determination of the 'reasonableness' of the defendant's procedures . . . is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question . . ." Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001).

Defendant Experian argues that Murphy has not met her burden of demonstrating that Experian's reinvestigation was unreasonable. The undisputed evidence in this case establishes the following facts: Murphy repeatedly insisted through telephone conversations that she did not own the Midland account; Experian's investigation consisted *solely* of ACDVs sent to Midland; and no one from Experian either requested or received any documents other than the ACDV. Experian did not ask for or receive a contract signed by Murphy evidencing her ownership. Experian did not ask for or receive charge slips signed by Murphy. Experian did not ask for or receive a credit card application signed by Murphy. The only information Experian received from Midland was

Murphy's name, current address and social security number.  Additionally, Experian had notice that the Providian account, which was the same account reported under a different name, had been previously removed from Murphy's credit report as a result of her earlier dispute.  A jury considering this evidence could conclude that Experian negligently failed to take *reasonable* steps to verify the accuracy of the information it reported to third parties.   As I discussed above, when, as here, the facts are disputed, "reasonableness" is uniquely a question for a jury.  Bruce, 103 F. Supp. 2d at 1143.  Summary judgment for Experian will be denied on Murphy's 15 U.S.C. § 1681i(a) claim.

Defendant Trans Union also argues that Murphy has failed to demonstrate that additional inquiry beyond the reinvestigation conducted by Trans Union would have made a difference.  The record does not support this argument.  There is a material factual dispute whether the information reported by Trans Union against Murphy was accurate.  Similarly, Trans Union had also previously deleted the delinquent Providian account from Murphy's credit report.  Trans Union knew there was previous confusion regarding Murphy's accounts.  Murphy has demonstrated that a material factual dispute exists regarding whether or not further inquiry would have made a difference, and as a result, whether Trans Union's reinvestigation procedure was reasonable.

Summary judgment for Trans Union will be denied on Murphy's 15 U.S.C.  § 1681i(a) claim.

### D. *There is a Material Dispute as to the Reasonableness of Defendants' Reliance on Midland*

Defendants argue that Midland's breach of its duties under 15 U.S.C. section 1681s-2 to furnish accurate information to credit reporting agencies limits the liability of Experian and Trans

Union.  I could not find a reported case supporting this argument.  It is, however, well established that "a credit reporting agency is not liable under the [FCRA] for reporting inaccurate information obtained from a [presumptively reliable source], *absent prior notice from the consumer that the information may be inaccurate*."  Anderson v. Trans Union, LLC, 345 F. Supp. 2d 963, 971 (D. Wis. 2004) (extending the holding of Henson v. CSC Credit Services, 29 F.3d 280, 285 (7th Cir. 1994)) (emphasis added).  Prior notice from the consumer therefore removes the presumption that a credit reporting agency's reliance on the furnisher was reasonable, and accordingly removes any limitation on liability.  Id.  If it is undisputed that the furnisher is a reliable source, then no reasonable jury could find that the credit reporting agency failed to comply with the FCRA's mandate to follow reasonable procedures.  Id.  However, after Murphy initiated her dispute with Experian and Trans Union, the two credit reporting agencies were on notice of Midland possibly reporting inaccurate information.  Murphy has demonstrated that a material factual dispute exists regarding whether or not further inquiry would have made a difference, and, as a result,  whether Defendants' reinvestigation procedure was reasonable.

Summary judgment for Experian and Trans Union will be denied on Eunice Murphy's 15 U.S.C.  § 1681i(a) claim.

### E.     *Defendants are Entitled to Summary Judgment in Part Based Upon Causation and Damages*

Without a causal relation between a violation of the FCRA and the loss of credit, or some other harm, a plaintiff cannot obtain an award of "actual damages."  Crabill, 259 F.3d at 664.

### *1.     Defendants are Entitled to Summary Judgment as to Murphy's Lost Credit Opportunity Damages Because She Cannot Prove Causation*

Experian and Trans Union argue that Murphy has not met her burden of proving that either an Experian or Trans Union credit report caused her loan denial from Community Bank. Murphy has not put forward any evidence supporting a finding that Community Bank relied on an Experian credit report in its denial. Rather, the denial letter specifically stated that it was based on a Trans Union credit report. Therefore, summary judgment for Experian will be granted on Murphy's 15 U.S.C. § 1681i(a) claim as to the issue of causing Murphy's credit denial.

While it is uncontested that the Community Bank letter stated it was based on the Trans Union credit report, Trans Union argues that the letter also states that the denial was founded on a number of reasons, none of which specifically state the Midland account. In order for Murphy to create an issue as to causation of the credit denial, she is required to produce evidence that the inaccurate entry was a "substantial factor" in the denial of credit. Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004). The Community Bank denial letter states that the principal reasons for the denial included "excessive obligations in relation to income," "delinquent past or present credit obligations with others," and "garnishment, attachment, foreclosure, repossession, collection action or judgment." In addition to the delinquent Midland account, Murphy's credit report contained other negative tradelines. Murphy admits that because of these negative tradelines, her credit report "doesn't look good." Murphy has put forth no evidence from Community Bank that the Midland account was a substantial factor in the loan denial, and as a result, Murphy has failed to meet her burden on this issue.

Summary judgment for Trans Union on will be granted on Murphy's 15 U.S.C. § 1681i(a)

claim as to the issue of causing Murphy's credit denial.

### 2. *Defendants are Denied Summary Judgment as to Murphy's Emotional Distress Damages Because There is a Material Dispute as to Causation and Actual Damages*

In addition to the lost credit opportunity with Community Bank, Murphy claims that she suffered emotional distress as a result of Experian and Trans Union's actions. Defendants Experian and Trans Union argue that because Murphy cannot prove causation on her claim, or prove actual damages, they are therefore entitled to summary judgment.

Even when there are no out-of-pocket expenses, humiliation and mental distress do constitute recoverable elements of damage under the Act. Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834-35 (8th Cir. 1976) (the "much maligned rule" precluding recovery in tort for mere mental pain and anxiety is inapplicable to the FCRA); Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1332-33 (9th Cir. 1995) (awarding actual damages under the FCRA based on claims of emotional distress only); Stevenson v. TRW Inc., 987 F.2d 288, 296-97 (5th Cir. 1993)(emotional distress damages may include damages for embarrassment, humiliation and mental anguish). However, a plaintiff cannot recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the inaccurate information from a credit reporting agency. Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475 (2d Cir. 1995).

Experian and Trans Union argue that Murphy is unable to make a showing of causation because Murphy has not proven an inaccuracy in an Experian or Trans Union credit report was provided to third parties. Such a showing "is an essential element of a claim under the [FCRA]." Spence v. TRW, Inc., 92 F.3d 380, 382 (6th Cir. 1996). As discussed earlier, Murphy has met her

burden of establishing a material question of fact on the accuracy of the information reported by Trans Union regarding ownership of the Midland account.

Murphy has also put forth evidence proving that multiple third parties received her Experian and Trans Union credit reports during the period between her reporting the inaccuracy and early 2005. The December 2005 "inquiry section" of Murphy's Experian consumer disclosure lists seven reports requested in 2004 and several in 2005. These reports are evidence of a third party learning of the alleged inaccurate information on Murphy's Experian credit report. This provides a basis for Murphy's claim that Experian caused her emotional distress.

In its interrogatory answers, Trans Union provided a list of 13 companies, including Community Bank, who received a copy of Murphy's credit report from Trans Union after Murphy reporting the alleged inaccuracy to Trans Union . Therefore, Murphy has made a showing of an alleged inaccuracy in a Trans Union credit report was provided to a third party. This provides a basis for Murphy's claim that Trans Union caused her emotional distress.

Having put forward evidence of causation, Murphy is also required to provide sufficient evidence of her actual harm. An award of damages for emotional distress must be supported by competent evidence of "genuine injury." Carey v. Piphus, 435 U.S. 247, 264 n.20, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978). Such evidence includes evidence of physical injury, medical treatment for any psychological or emotional injury, or other witness corroboration of any outward manifestation of emotional distress. Forshee v. Waterloo Indus., 178 F.3d 527, 531 (8th Cir. 1999).

Defendants argue that Murphy has made "vague claims" of actual injury, supported only by "conclusory affidavits" from herself, her grandson, Troy Fogarty, and her neighbor, Penny Hill,

that without more are simply not enough to support a claim under the FCRA.  Defendants cite to Sarver v. Experian Info. Solutions, which states that "when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements."  Sarver, 390 F.3d at 971.

However, the record shows that  Murphy has supported her allegations of emotional distress with not just her own testimony, but also the testimony of two other witnesses who corroborate her allegations.  In his affidavit, Fogarty states that as a result of the "collection of an account that was 'Murphy's' (the name we called her husband) before he was married to her," Eunice Murphy always appeared mad and stressed.  She would pace through the house, appearing distraught.  She complained about her stomach and chest hurting.  She complained about her head pounding, and had Fogarty get her Buffrin for headaches.  When she got the credit reports, she would shake the reports angrily and yell and scream and her face would turn red.  Her neighbor, Penny Hill, remembers that Murphy was always a nervous wreck when calls would come about the money she didn't owe and that Murphy appeared distraught over the bills.  Hill states that Murphy looked tired all of the time, had problems sleeping, and lost a lot of weight about that time.

These witnesses' corroboration of Murphy's outward manifestations of emotional distress meets the requirements for competent evidence of "genuine injury."  While Defendants argue that "any emotional distress [Murphy] may have suffered during the past few years was most likely the result of some combination of the untimely deaths of both her husband in 2000 and her grandson, who she raised, in 2002 . . . and the myriad [of] medical ailments [Murphy] has been suffering from since long before she was even aware of who [defendants are]," that determination should be made by the jury.

Summary judgment for Experian and Trans Union will be denied on Murphy's 15 U.S.C. § 1681i(a) claim as to the issue of actual damages of emotional distress.

### F. *Trans Union is Entitled to Summary Judgment on Murphy's FCRA Section 1681n Claim; Experian is Not Entitled to Summary Judgment on that Claim*

Section 1681n states that "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable . . . ." 15 U.S.C. § 1681n. To prevail on a claim for willful noncompliance with the FCRA and to recover punitive damages, a plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others. Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998). Plaintiff need not show malice or evil motive. Id.

In its response to Trans Union's motion for summary judgment, Murphy admits that Trans Union did not act willfully. Therefore, summary judgment for Trans Union will be granted on Murphy's 15 U.S.C. § 1681n claim.

For the same reasons as stated above with respect to Murphy's claim of negligent violation of the FCRA, I believe that there are genuine disputes of fact regarding her claim that Experian willfully failed to conduct an investigation of her disputes. I am obligated at this point not to weigh the evidence or question its veracity, but to eliminate any claims upon which no rational trier of fact could find for plaintiff. Based upon the evidence described above, I am unable say as a matter of law that no reasonable jury could find that Experian willfully failed to investigate plaintiff's disputes. Therefore, summary judgment for Experian will be denied on Murphy's 15 U.S.C. § 1681n claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment [#52 and #55] are **GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** in favor of Experian and Trans Union on Murphy's 15 U.S.C. § 1681e(b) claim. Summary judgment is **GRANTED** in favor of Experian and Trans Union on Murphy's 15 U.S.C. § 1681i(a) claim as to the issue of causing her Community Bank credit denial. Summary judgment is **GRANTED** in favor of Trans Union on Murphy's 15 U.S.C. § 1681n claim. Summary judgment is **DENIED** on all other claims.

Dated this 11th Day of October, 2006.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE